IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TONIE ELMORE,

    Petitioner,               No. CIV S-05-1641 GEB GGH P

    vs.

MIKE KNOWLES, Warden,

    Respondent.          <u>ORDER</u>

                                /

            Petitioner, represented by appointed counsel, seeks relief pursuant to 28 U.S.C. § 2254. On October 6, 2006, respondent brought a motion to dismiss the petition as barred by the AEDPA one-year statute of limitations, to which petitioner filed an opposition on October 13, 2006. Subsequently, on October 20, 2006, the motion was noticed for hearing on November 30, 2006. At the hearing, only counsel for respondent, Justain Paul Riley, was present; the court heard respondent's oral argument and then deemed the matter submitted. Following the hearing, the minutes of the hearing (docket entry # 35) indicate that petitioner's counsel appeared, indicating that he was not present earlier, according to the minutes, "due to accident."

            Petitioner, who was convicted of first degree murder (two counts), attempted robbery and attempted voluntary manslaughter, with special circumstances found true and an admitted prior felony conviction, was sentenced on November 2, 1998, in Sacramento County

Superior Court, to two life terms without the possibility of parole and an additional sixteen years.[1]  Second Amended Petition (SAP), p. 2.  He filed his present petition on August 16, 2005.[2]  This matter proceeds upon the second amended petition, filed on June 21, 2006, wherein petitioner's grounds for relief are: 1) insufficient evidence to support attempted robbery conviction, the felony murder convictions based upon it, and the special circumstance based upon it; 2) insufficient evidence of premeditation to support first degree murder;[3] 4) first degree murder and attempted robbery convictions must be reversed because trial court failed to instruct fully on after-formed intent.  SAP, pp. 5-8.

The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C. § 2244(d)(1):

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

---

[1] Respondent states that petitioner was sentenced to an indeterminate state prison term of life without the possibility of parole, plus a determinate 20-year term.  Motion to Dismiss (MTD), p. 2, Lodged Documents 1 & 2.

[2] Court records indicate that petitioner has filed two prior petitions in this court.  Case No. CIV S-00-1314 GEB GGH P was filed on June 14, 2000.  Case No. 04-2239 GEB GGH P was filed on October 21, 2004.  The petition in Case No. 00-1314 was dismissed on October 11, 2000, for petitioner's failure to exhaust state court remedies.  In Case No. 04-2239, the petition was dismissed without prejudice, on April 20, 2005, petitioner having failed to file a timely amended petition or to otherwise respond to the court's order dismissing his petition with leave to amend.

[3] Petitioner's claim 3, that the trial court failed to instruct properly on petitioner' claim of right to property has been abandoned.

>    recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

On September 21, 2000, the California Court of Appeal affirmed petitioner's conviction. Motion to Dismiss (MTD) p. 3, Respondent's Lodged Document No. 2. Petitioner sought review in the state supreme court, which was denied on January 10, 2001. Id., Lodged Document Nos. 3 & 4. Petitioner thereafter filed one state post-conviction collateral challenge in Sacramento County Superior Court, on October 6, 2004, which was denied, on October 29, 2004, with citations to, inter alia, and In re Clark, 5 Cal.4th 750 (1993), and In re Robbins, 18 Cal.4th 770 (1998). Id., Lodged Document 5. As the court has noted, petitioner previously filed a petition in this court on October 21, 2004, which was dismissed without prejudice for failure to prosecute on April 20, 2005. See note 1, supra, & MTD, p. 2, Lodged Document 7. The instant petition, as also noted previously, was filed on August 16, 2005.

As respondent sets forth (MTD, p. 3), petitioner's conviction became final on April 10, 2001, 90 days after the state supreme court denied his petition for review on direct appeal on January 10, 2001. Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999) ("holding] that the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the [ninety-day] period within which a petitioner can file a petition for a writ of certiorari with the United States Supreme Court, whether or not the petitioner actually files such a petition."). The statute of limitations began to run the day after the date of final conviction/judgment in this case, April 11, 2001. Patterson v. Stewart, 252 F.3d 1243, 1246 (9th Cir. 2001). Therefore, petitioner had until April 10, 2002, to file a timely federal petition. The instant petition, filed August 16, 2005, is untimely absent applicable tolling.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent

3

judgment or claim is pending shall not be counted toward any period of limitation. The court now considers whether petitioner is entitled to tolling pursuant to § 2244(d)(2).

        Petitioner does not contest respondent's contention that the state superior court habeas petition filed in October, 2004, and denied as untimely, was not a "properly filed" application so as to provide tolling within the provisions of 28 U.S.C. § 2244(d)(2). Pace v. DiGuglielmo, 544 U.S. 408, 414, 12 S. Ct. 1807, 1812 (2005) ("[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter" for purposes of § 2244(d)(2).") Nor does petitioner take issue with respondent's argument that the October, 2004, filing of the state court habeas petition contention, which was more than two years beyond the statutory expiration period, did not restart the clock. Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001) (once the statute has run, a collateral action cannot revive it). Petitioner also does not argue that petitioner is entitled to statutory tolling for the prior petition brought in federal court, challenging the same conviction and sentence, in Case No. 04-2239 GEB GGH P. The court observes that while no party references the earlier federal petition, filed on June 14, 2000, prior to the expiration of the statutory tolling period, on June 14, 2000, Case No. CIV S-00-1314 GEB GGH P, and dismissed in October, 2000, without prejudice for petitioner's failure to exhaust state court remedies, that petition does not extend the limitations period either because the pendency of neither of the prior federal petitions extends the AEDPA statute of limitations, whether timely filed or not. Duncan v. Walker, 533 U.S. 167, 181-82, 121 S. Ct. 2120 (2001). On the other hand, as to plaintiff's claims for equitable tolling (see discussion immediately below), the first habeas petition, filed in this court even before the state court of appeal affirmed the judgment, arguably tends to demonstrate, petitioner's early, if mistaken, efforts to be diligent in this matter.

        Petitioner's argument for timeliness rests solely on petitioner's claims of entitlement to equitable tolling. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace, supra, at 418, 125 S. Ct. at 1814; Miranda v.

4

Castro, 292 F.3d 1063, 1065 (9th Cir. 2002) (a habeas petitioner bears the burden of proving that equitable tolling should apply to avoid dismissal of an untimely petition). "Equitable tolling is unavailable in most cases," and is only appropriate "if *extraordinary* circumstances beyond a prisoner's control make it impossible to file a petition on time." Miranda, supra, at 1066 (internal quotations/citations omitted [emphasis added in Miranda]). A petitioner must reach a "very high" threshold "to trigger equitable tolling [under AEDPA]...lest the exceptions swallow the rule." Id.

In Calderon v. U.S. District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled on other grounds, Calderon v. U.S. District Court for Cent. Dist. of CA. (Kelly), 163 F.3d 530 (9th Cir. 1998) (en banc), itself abrogated by Woodford v. Garceau, 538 U.S.202, 123 S. Ct. 1398 (2003), the Ninth Circuit found that the statute of limitations could be equitably tolled if extraordinary circumstances beyond a prisoner's control made it impossible to file the petition on time. "In addition, '[w]hen external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling may be appropriate.'" Lott v. Mueller, 304 F.3d 918, 922 (9th Cir. 2002), quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).

Equitable tolling will not be available in most cases because tolling should only be granted if extraordinary circumstances beyond a prisoner's control make it impossible for him to file a petition on time. Beeler, 128 F.3d at 1288-89. As held in Beeler, "[w]e have no doubt that district judges will take seriously Congress's desire to accelerate the federal habeas process, and will only authorize extensions when this high hurdle is surmounted." 128 F.3d at 1289. "Mere excusable neglect" is insufficient as an extraordinary circumstance. Miller v. New Jersey Dept. of Corrections, 145 F.3d 616, 619 (3rd Cir. 1998). Moreover, ignorance of the law does not constitute such extraordinary circumstances. See Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 909 (9th Cir. 1986).

\\\\\

In the Calderon (Beeler) case, the Court of Appeals held that the district court properly found equitable tolling to allow Beeler more time to file his petition. Beeler's lead counsel withdrew after accepting employment in another state, and much of the work he left behind was not usable by replacement counsel – a turn of events over which the court found Beeler had no control. The Court of Appeals held that the district court properly found these were "extraordinary circumstances" sufficient to toll the statute of limitations.[4] The Ninth Circuit also found extraordinary circumstances in Calderon v. U.S. Dist. Ct. (Kelly), supra, 163 F.3d 530. The three reasons given which independently justified tolling were: a district court stay which prevented petitioner's counsel from filing a habeas petition, mental incompetency until a reasonable time after the court makes a competency determination, and the fact that petitioner did at one time have timely habeas proceedings pending which were mistakenly dismissed, not as a result of any doing by petitioner. Id. at 541-42. See also Corjasso v. Ayers, 278 F.3d 874 (9th Cir. 2002) (clerk's unjustified rejection of a petition justified partial tolling); Miles v. Prunty, 187 F.3d at 1107 (delay by prison in withdrawing funds from prisoner's trust account, preparing and mailing filing fee were circumstances beyond his control, qualifying him for equitable tolling).

Conversely, in U.S. v. Van Poyck, 980 F. Supp. 1108, 1110-11(C.D. Cal. 1997), the court found that a petitioner's circumstances were not extraordinary in the following circumstances: inability to obtain transcripts from court reporters, and general prison lockdowns preventing the prisoner's access to the library and a typewriter which were necessary to his motion. See also Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1988) (reliance on incompetence of jailhouse lawyer not sufficient to justify cause to excuse procedural default); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999) (prisoner's unfamiliarity of law did not toll

---

[4] See also Baskin v. United States, 998 F. Supp. 188 (D. Conn. 1998), wherein the court applied equitable tolling where petitioner's attorney failed to notify him of the denial of a petition for certiorari until thirteen months after the denial was entered.

statute); Eisermann v. Penarosa, 33 F.Supp.2d 1269, 1273 (D.Haw. 1999) (lack of legal expertise does not qualify prisoner for equitable tolling); Henderson v. Johnson, 1 F.Supp.2d 650, 656 (N.D. Tex. 1998) (same); Fadayiro v. United States, 30 F.Supp.2d 772, 779-80 (D.N.J. 1998) (delay in receipt of transcripts does not justify equitable tolling).

All told, petitioner seeks a total of about two and one-half years of equitable tolling for two different periods. As to petitioner's first contention that he is entitled to equitable tolling until August 20, 2003, when he first learned of the denial of his petition for review, which actually occurred more than two years earlier on January 10, 2001, because his state appellate attorney failed to notify him regarding the denial, the court is inclined to recommend granting such tolling until that date. In support of that argument, petitioner cites various persuasive authority. SAP, p. 3, Opposition (Opp.), p.2. In Miller v. Collins, 305 F.3d 491, 494-496 (6th Cir. 2002), the Sixth Circuit granted petitioner equitable tolling of the § 2244 one-year statute of limitations period for the nearly six month-period during for which petitioner, who was otherwise diligent in pursuing his claims, adequately demonstrated his lack of notice that the Ohio Court of Appeals had rendered its decision on petitioner's application to reopen his direct appeal. In Woodward v. Williams, 263 F.3d 1135, 1143 (10th Cir. 2001), the Tenth Circuit noted that "a prisoner's lack of knowledge that the state courts have reached a final resolution of his case can provide grounds for equitable tolling if the prisoner has acted diligently in the matter," in turn citing a Fifth Circuit case, Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir.) (remanding for the district court to determine the date petitioner first received notice of the denial of his state appeal), amended in part, 223 F.3d 797 (5th Cir. 2000). In Knight v. Schofield, 292 F.3d 709-712 (11th Cir. 2002), the Eleventh Circuit found petitioner entitled to equitable tolling for the eighteen-month period of time from September 9, 1996, the date of the state supreme court's decision on his application for review of a lower state court habeas petition denial, until March 4, 1998, when the Georgia Supreme Court failed to notify petitioner of its decision and petitioner was diligent in making inquiries about his case status. The court has also previously noted

(footnote 4, supra), Baskin v. United States, 998 F. Supp. 188, where equitable tolling was applied following entry of a petition denial to the thirteen-month period of time that elapsed before petitioner's counsel provided petitioner with actual notice thereof.

Petitioner, herein, includes as Exhibit B to his second amended petition, his declaration stating that his state appellate attorney, Katherine Hart, on whom he had relied to inform him as to the status of his state appeal, and who had told him of the date of the denial of his initial appeal on September 21, 2000, failed to inform him of the date of the supreme court decision, although he had been assured that he would so informed. Exh. B, petitioner's declaration (dec.), ¶¶ 2-3. Petitioner made inquiries in early 2003 regarding the status of his petition for review, but was not able to contact Ms. Hart; when he wrote to the Central California Appellate Project (CCAP) on about August 8, 2003, he was sent a letter from CCAP, attached as Exh. 1[5] to his declaration, telling petitioner of her current (evidently different) business address and that his petition for review had been denied more than two years earlier. Id., ¶ 4 & Exh. C. A copy of this letter was evidently forwarded by CCAP to Ms. Hart, as was a letter, dated November 14, 2003, a second letter from CCAP, responding to an August 22, 2003, letter from petitioner, to which Ms. Hart was evidently not responsive to petitioner.

In oral argument at the hearing of this motion, respondent noted the letter from Katherine Hart, dated March 1, 2004, that petitioner includes as Exh. F to his second amended petition, as evidence that petitioner has not adequately shown that he lacked notice.[6] In the letter

---

[5] Actually, this letter is denominated Exh. C in the court's docket.

[6] Petitioner includes as Exh. G, a copy of an earlier letter from Katherine Hart, dated September 25, 2000, wherein she states she is enclosing a copy of the state court of appeal decision and informing petitioner that he should advise her whether or not to file a petition for review on his behalf. Petitioner's counsel also submits a declaration, as Exh. A, authenticating the exhibits as true and accurate copies of the originals, and indicating that he spoke with Ms. Hart on the telephone on three occasions, whereupon it was revealed that she had no records whatever regarding petitioner's case. Counsel declares that the copies of briefs in the case had to be obtained from CCAP and that letters submitted had been attached to petitioner's 2004 habeas petition.

8

responding to petitioner's February 5, 2004, letter, Ms. Hart states that she notified petitioner of the denial of the petition for review and that she had shipped the transcripts and files, but also stating that she had had problems with prison mail shipments having been lost or not sent transferred from one prison to another. Although she states that she "always" notifies clients when a petition for review has been denied, as the undersigned noted at the hearing, the letter is not an unequivocal statement that petitioner was informed by her. She even offers as a justification for any lack of notice that the prison mail delivery system may have failed him. The court finds that petitioner was sufficiently diligent in his efforts to learn of the disposition of the petition for review and that he did lack notice of the denial such that he is entitled to equitable tolling until the date of receiving actual notice of the denial on or about August 20, 2003.[7]

Permitting equitable tolling until petitioner's self-identified date of belated actual notice of the denial of his state supreme court petition only gets petitioner one year from that date, August 20, 2003, or until August 19, 2004, to file his federal petition. The instant petition, as noted, was filed on August 16, 2005, almost another full year later. Petitioner, as also noted, did file a state superior court habeas petition on October 6, 2004, which was denied on October 29, 2004 (lodged documents 5 & 6), the denial citing In re Clark, supra, & In re Robbins, supra, as well as a federal petition, evidently raising the same claim while the lower state court petition was still pending, on October 21, 2004, which was dismissed without prejudice on April 20, 2005. The 2004 state court petition was filed almost a month and a half beyond the end of the first equitably tolled period and was pending for less than a month. The federal petition was pending for six months, after which an additional 118 days (almost three months) passed before

---

[7] In his declaration, it is somewhat difficult to discern whether petitioner identifies the date that he received the return letter from CCAP, as August 25, 2003, or as the date on which he was allegedly subjected to a vicious assault by prison staff. SAP, Exh. B, ¶ 5. As, however, petitioner's counsel in the opposition identifies August 20, 2005, as the date he received actual notice, the court will rely on this date as the date of notice, particularly, since in another exhibit referenced later (Exh. E-2), petitioner's radiology report mentions the date of the assault as 8/25/03.

the instant petition was filed.

As to the second portion of time, following his notice of the state supreme court denial, for which petitioner contends that he is entitled to equitable tolling, his ground for tolling for another thirteen and a half months, until August 25, 2004, in order to render the instant petition timely, approximately one year later, is that his medical and psychiatric condition made attending to any legal matters for over a year impossible. SAP, p. 3. As noted in footnote 6 herein, petitioner alleges that he was "viciously assaulted by members of the prison staff," at or around the time of having finally received notice of the denial of the petition for review, resulting in pain and injuries that rendered him incapable of cogently handling or addressing any legal problems. SAP, Exh. B, ¶ 5. Petitioner references excerpts of medical records attached, which include a physician's order form, prescribing "psychotropic meds," dated as ordered on 7/17/03, for a ninety-day period (specifically, Olanzapine and Paroxepine); a radiology report of an x-ray of plaintiff's shoulders due to a complaint of pain from an assault on 8/25/03; a physician's order form prescribing, on 8/28/03, psychotropic medications in the form of ninety-day prescriptions of Paxil, Olanzapine and Depakote; a form statement of informed consent with respect to the use of antipsychotic agents and referencing in a generic and unspecified fashion, petitioner's mental illness which petitioner evidently signed on 11/19/04; physician's,[8] interdisciplinary and outpatient progress notes, dated 3/16/04, 3/30/04, 7/9/04, 7/23/04, 9/20/04, 9/28/04, 10/5/04, which note, to the limited extent that they are legible to the court, plaintiff's requests for medication for shoulder pain, complaints of neck pain, reference to broken glasses, complaints of numbness in his arms and legs and back pain as a result of the 8/25/03 assault, x-ray and back exam results; a 5/22/05 health care request by petitioner concerning "very bad pain." SAP, Exhs. E-1 through E-10. One entry appears to suggest that petitioner's multiple complaints are "exaggerated." Exh. E-6.

---

[8] On one copy of the physician's progress notes, Exh. E-8, the month and day are simply illegible, but the year is 2004.

Respondent's lodged document 8 is a copy of a Rules Violation Report (RVR) of a charge of resisting staff made against petitioner, dated 8/25/03. This appears to be the only evidence of any incident, other than by petitioner's representation, occurring on that date. The RVR indicates that petitioner is a participant in the Mental Health Services Delivery System at the CCCMS level of care. There is conflicting testimony recorded in the hearing report with a Psych Clinician telling the Senior Hearing Officer that petitioner's version of events, that he had been summoned to the rotunda by clinic staff, that he did not resist staff, that the reporting employee C/O Maxham shouted profanities at him and grabbed and forced handcuffs on him while the Psych Clinician was waving petitioner in, was all true, and another clinician stating that the C/O Maxham had used profanity against petitioner, while a control booth officer supported Maxham's version of events. Noting the discrepancy, the infraction was reduced to a charge of disobeying orders.

What is not evident from the only report submitted as to this event is that petitioner was viciously assaulted by a number of prison staff or how petitioner sustained the alleged injuries that purportedly incapacitated him, along with exacerbating his mental condition, to the point that he was unable for more than a year, as he avers, to address the legal issues arising from his conviction, and this it is petitioner's burden to demonstrate. At oral argument, respondent made the point that petitioner during the period of time that is at issue was able to file what counsel characterized as "a reasoned and procedurally sound" state habeas corpus petition, on October 6, 2003, regarding his claims of discrimination on the basis of sexual orientation and of inadequate medical care, and attaching various inmate appeals. Lodged Document 9. Neither does his October, 2004, state court habeas petition, which falls very narrowly beyond the range of time for which petitioner seeks equitable tolling state habeas corpus petition complaining of his appellate attorney's failure to provide him notice of the petition for review does not show a lack of coherence or a mind so stressed and disorganized that it would rise to the requisite extraordinary circumstance to entitle him to equitable tolling. It simply has not yet been shown,

despite the incident of August 25, 2003, and the psychotropic medications he was on through an extended period that he could not, with a diligent effort, frame his federal claims prior to the filing of the instant petition. In fact, one of petitioner's exhibits indicates that he is still feeling "very bad pain" in May of 2005, far outside the time for which petitioner seeks equitable tolling, which undermines petitioner's claim of a need for such tolling earlier for the same reason.

Petitioner relies on Laws v. Lamarque, 351 F.3d 919 (9th Cir. 2003) for support of his claim of entitlement to equitable tolling based on petitioner's lack of mental illness. SAP, p. 18, Opp., pp. 5-6. Therein the Ninth Circuit noted that equitable tolling is available in this circuit only "'when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'" Laws, supra, at 922, citing Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003). The Laws Court, id., noted that grounds for equitable tolling under § 2244 (d) are "highly fact-dependent," quoting Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000). The Ninth Circuit held that it was an abuse of discretion for the district court to deny Laws's petition, where he claimed he was mentally ill between April 23, 1996 (the date of AEDPA's enactment) and May 16, 2000, when his first state habeas petition was filed and entitled to equitable tolling, without the court's having ordered development of the factual record supporting the claim. Id., at 922-23. The case also makes clear that the Ninth Circuit observed that it had previously "held that a 'putative habeas petitioner's mental incompetency [is] a condition that is, obviously, an extraordinary circumstance beyond the prisoner's control,' so 'mental incompetency justifies equitable tolling' of the AEDPA statute of limitations." Laws, supra at 923, citing Calderon v. U. S. Dist. Ct. (Kelly), supra, 163 F.3d at 541. In doing so, the Ninth Circuit in that case noted, as a backdrop, that the trial court had expressed its concern about Laws's competency and had ordered psychiatric examinations and a hearing under Cal. Penal Code § 1368, and had found, in the face of conflicting expert testimony that Laws was "'for the present at least'" competent to stand trial. Laws, supra, at 921. While petitioner herein has made no suggestion that his competency was at

issue at his trial, the Laws Court stated that the determination of competency at the time of trial (despite the evidence of serious mental illness) did not bear on the competency of Laws for the period of time at issue for which no medical records had been provided. In the instant case, petitioner has produced some, but not adequate evidence of mental illness, during the relevant period and very limited evidence of having suffered a beating that could have caused his mental condition to deteriorate so cripplingly as to render that condition an extraordinary circumstance such that his time for filing should be equitably tolled.

Notwithstanding the out-of-circuit district court case and the Second, Tenth and Eleventh Circuit cases cited by respondent, this court is bound by Laws. While the undersigned does not find petitioner should be granted equitable tolling on the ground he has raised for a second period of tolling based on the evidence submitted, the court has little choice, in light of Laws, but to grant, as petitioner alternatively suggests, an evidentiary hearing on the question of whether petitioner should have equitable tolling for the period from August 25, 2003, until October 6, 2004, the filing date of his state court habeas petition. Petitioner has not yet met his burden to demonstrate that he was, in fact, subjected to the merciless beating he suggests occurred on August 25, 2003, debilitating physically and exacerbating a mental condition. As respondent noted at oral argument, no specific diagnosis of his mental condition has been proffered. Nor does petitioner demonstrate in the face of his intervening filings, noted above, that he was suffered mental illness to the degree that he could not have earlier filed the instant petition. He has not shown that the psychotropic medications he was administered extended for the full period of time for which he claims equitable tolling, and whether they were administered for the whole period, or most of the period, why they should not be deemed effective enough to have permitted him to file the instant petition sooner.

Accordingly, the court will set an evidentiary hearing for October 29, 2007, at 9:00 a.m. and makes the following ORDERS with respect to the impending evidentiary hearing:

\\\\\

  A.  <u>Witnesses</u>

On or before ten days prior to the hearing the parties shall provide witness lists, including addresses and telephone numbers, to opposing counsel.

Each party may call any witnesses designated by the other.

1. No other witness will be permitted to testify unless:

 a. The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated prior to the evidentiary hearing.

 b. The witness was discovered after the exchange of witnesses and the proffering party makes the showing required in "2," below.

2. If not timely designated within the ten day period prior to the evidentiary hearing, the parties shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so that the court may consider at the evidentiary hearing whether the witnesses shall be permitted to testify. The witnesses will not be permitted unless:

 a. The witnesses could not reasonably have been discovered prior to the exchange of witness lists;

 b. The court and the opposing party were promptly notified upon discovery of the witnesses;

 c. If time permitted, the party proffered the witnesses for deposition; or

 d. If time did not permit, a reasonable summary of the witnesses' testimony was provided to the opposing party.

3. On or before twenty days prior to the hearing, the parties shall designate their expert witnesses, if any; on or before thirty days prior to the hearing, movant shall provide respondent and respondent shall provide movant, with the report of each party's expert witness(es) in compliance with Fed. R. Civ. P. 26;

### B. Exhibits, Schedules and Summaries

Both parties shall exchange copies of their exhibits twenty days prior to the evidentiary hearing. Any objections to exhibits may be raised at the hearing.

Movant will use numbers to mark exhibits; respondents will use letters.

1. No other exhibits will be permitted to be introduced unless:

   a. The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence which could not have been reasonably anticipated, or

   b. The exhibit was discovered after the exchange of exhibits and the proffering party makes the showing required in Paragraph "2" below.

2. If not timely exchanged within the fifteen day period prior to the evidentiary hearing, the parties shall promptly inform the court and opposing party of the existence of such exhibits so that the court may consider their admissibility at the evidentiary hearing. The exhibits will not be received unless the proffering party demonstrates:

   a. The exhibits could not reasonably have been discovered earlier;

   b. The court and the opposing party were promptly informed of their existence; or

   c. The proffering party forwarded a copy of the exhibit(s) (if physically possible) to the opposing party. If the exhibit(s) may not be copied the proffering party must show that he has made the exhibit(s) reasonably available for inspection by the opposing party.

The parties are directed to each bring an "exhibit book" containing copies of their exhibits to the evidentiary hearing. The "exhibit book" is for bench use during trial.

\\\\\

\\\\\

C. <u>Miscellaneous</u>

Counsel shall make the appropriate writ ad testificandum filings if the presence of movant or any other incarcerated witness is desired. Petitioner shall file these writs at least thirty days prior to the hearing. The parties shall otherwise make their own arrangements for the attendance of non-incarcerated witnesses.

Accordingly, IT IS HEREBY ORDERED that an evidentiary hearing is set for October 29, 2007, at 9:00 a.m., in Courtroom 24, before the undersigned on the question of whether petitioner can meet his burden to demonstrate that he is entitled to equitable tolling for the period of time from August, 2003, until October, 2004, based on a claim of mental illness; the parties shall prepare for hearing in accordance with the terms set forth in this order.

DATED: 8/7/07

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
elmo1641.evi